IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MISTY S. BOCK                                                    PLAINTIFF

V.                                          NO. 09-5230

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Misty S. Bock, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.  Procedural Background:**

Plaintiff filed her current applications for DIB and SSI on July 18, 2007, alleging an inability to work since May 15, 2005, due to left hip-pain and limited range of motion, left leg pain, poor memory, depression, and morbid obesity.  (Tr. 60).  For DIB purposes, Plaintiff maintained insured status through September 30, 2007.  An administrative hearing was held on February 12, 2009, at which Plaintiff appeared with counsel and testified.  (Tr. 211-262).

-1-

AO72A
(Rev. 8/82)

By written decision dated June 16, 2009, the ALJ found that Plaintiff had the following severe impairments: left hip deformity and obesity. (Tr. 13). However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she cannot perform sustained driving as a part of work duties. She cannot climb scaffolds, ladders, or ropes. She can occasionally climb ramps and stairs and stoop, bend, crouch, crawl, kneel, and balance.

(Tr. 15). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform other work, such as production work, call out operator, and charge account clerk. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 2, 2009. (Tr. 4-6). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and this case is before the undersigned for decision. (Docs. 9,12).

## II. Evidence Presented:

At the administrative hearing on February 12, 2009, Plaintiff testified that she completed high school. (Tr. 216). In 1995, when Plaintiff was in the fifth grade, she broke her hip and had hip surgery by Dr. Oscar Henderson of Rogers, where a pin was placed in her hip. (Tr. 65). She had a second surgery a year after the first surgery to take the pin out because "it was turning and going the other way." (Tr. 238). There are no medical records

-2-

indicating Plaintiff was treated by any physician subsequent to her hip surgery in 1995 and subsequent follow-up. She testified that her condition had worsened since the hip surgery, and that she had also gained about 200 pounds since she was 13 years old. (Tr. 247). As of the date of the hearing, Plaintiff was 5'8" and weighed 280 pounds. (Tr. 244). She stated that she had been married for approximately 2 years, and lived in a mobile home. Plaintiff testified that the only medication she took and had ever taken for her impairments was Ibuprofen. (Tr. 239). Plaintiff testified that Ibuprofen reduced the pain to where she "can tolerate it." (Tr. 241). She also stated that she had tried to get into free clinics, but they were not taking new patients or were already full for that day. (Tr. 241).

Plaintiff had a very limited work history - she worked at Tyson's in 2004 for a couple of months, packing chicken into boxes; at EZ Mart in 2005 as a cashier/stocker; and for a short period in 2006 at a donut place. (Tr. 222-223, 228).

The only medical evidence in the record is the General Physical Examination of Dr. Randy Conover on September 19, 2007; the Physical RFC Assessment of Dr. Stephen A. Whaley dated October 2, 2007; a Mental Diagnostic Evaluation from Gene Chambers of MindWorks dated October 19, 2007; a Physical RFC Assessment of Jerry Thomas dated April 23,2008; a Psychiatric Technique of Brad Williams dated May 6, 2008; and a Mental RFC Assessment of Brad Williams dated May 6, 2008. (Tr. 143-150.156-160, 167-174,189-194).

Dr. Randy Conover completed a general physical examination on September 19, 2007, and found that Plaintiff had normal motion of the spine; normal motion in the extremities except 80 degrees out of 100 degrees in her hips; and that she had a "limp to

-3-

left" and had normal limb function, with 90% grip. (Tr. 138-139). He further found that in her left hip, she had: decreased joint space severe; increased subchondral sclerosis "mod"; increased degeneration "mod" of femur head - shape is oval vs. round; and positive osteophytes[1] mild. (Tr. 140). He diagnosed Plaintiff with: 1. left hip deformity; 2. obesity; and depression. (Tr. 141). He found that Plaintiff could: sit; handle; finger; see; hear and speak; had moderate limitations in her ability to walk and stand; and had severe limitations in her ability to lift and carry. (Tr. 141).

In a Physical RFC Assessment by Dr. Stephen A. Whaley dated October 2, 2007, Dr. Whaley found that Plaintiff could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and push and/or pull unlimited, other than as shown for lift and/or carry. (Tr. 144). He further found that there were no postural, manipulative, visual, communicative, or environmental limitations established, and stated that Plaintiff's function form indicated capacity to sustain a full range of sedentary exertion. (Tr. 150). He stated that while her gait was "antalgic it does not appear to be ineffective." (Tr. 150).

In a Mental Diagnostic Evaluation by Gene Chambers, Ph.D., at MindWorks, dated October 19, 2007, Plaintiff reported that she had never been treated for any mental difficulties and was not taking any medication. The diagnostic impression by Dr. Chambers was:

---

[1]Osteophyte - A bony excrescence or osseous outgrowth. Called also osteophyma. Dorland's Illustrated Medical Dictionary 1369 (31st ed. 2007).

-4-

Axis I: Depressive Disorder, NOS;
Axis II: None identified;
Axis III: deferred;
Axis IV: Occupational limitations; and
Axis V: GAF - 60-70.

(Tr. 158). Plaintiff reported that she had no difficulty bathing or dressing herself, that she did not like to drive, that she and her husband did the shopping and both managed their finances, that she could do household chores, but they tended to hurt her hip, and she had to stop and rest. (Tr. 159). Dr. Chambers found that Plaintiff's capacity to communicate and interact in a socially adequate manner appeared to be within normal limits on a superficial level, and that her capacity to communicate in an intelligible and effective way was also within normal limits on a superficial level. (Tr. 159). It was also found that Plaintiff's capacity to cope with the typical mental/cognitive demands of basic work-like tasks, her ability to attend and sustain concentration on basic tasks, her capacity to sustain concentration on basic tasks, her capacity to sustain persistence in completing tasks, and her capacity to complete work-like tasks within an acceptable time frame, were all within normal limits. (Tr. 159).

In a Case Analysis dated November 5, 2007, Dan Donahue reported that he saw no evidence of a severe mental disorder. He found that Plaintiff's alleged mental problems were significant but did not seem "severe" within the definition of this program, based on medical evidence available at the time. (Tr. 151).

A later Physical RFC Assessment was completed by Jerry Thomas on April 23, 2008. Dr. Thomas found that Plaintiff could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk at least 2 hours in an 8-

-5-

hour workday;  sit about 6 hours in an 8-hour workday;  and push and/or pull unlimited, other than as shown for lift and/or carry.  (Tr. 168).  The evidence he used to support his conclusion was:  Plaintiff's hip surgery in 1995 ORIF (open reduction internal fixation); that she drives/shops;  her BMI (body mass index) 42; "limps No Ads";  and "x-ray - sig." DJD (degenerative joint disease) hip.  (Tr. 168).  He found that no postural, manipulative, visual, communicative, or environmental limitations were established.  (Tr. 169-171).

On May 6, 2008, a Psychiatric Technique was completed by Brad Williams, Ph.D. He concluded that Plaintiff suffered from depressive disorder, NOS;  that she had a mild degree of limitation in restriction of activities of daily living and difficulties in maintaining social functioning;  a moderate degree of limitation in difficulties in maintaining concentration, persistence, or pace;  and no episodes of decompensation.  (Tr. 185).  He found her symptoms suggested only situational depression, and that it was "appropriate to give her an RFC."  (Tr. 187).  Dr. Williams also completed a Mental RFC Assessment on May 6, 2008, wherein her found that Plaintiff was not significantly limited in 16 out of 20 categories.  (Tr. 189).  He further found that Plaintiff was moderately limited in: her ability to maintain attention and concentration for extended periods; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; her ability to accept instructions and respond appropriately to criticism from supervisors; and her ability to set realistic goals or make plans independently of others.  (Tr. 189).  He concluded that Plaintiff was able to perform work where interpersonal contact was routine but superficial, e.g. grocery checker;  and where complexity of tasks was learned by

-6-

experience, several variables, uses judgment with limits; and where supervision required was little for routine, but detailed for non-routine.  (Tr. 191).

A Vocational Analysis dated June 2, 2008 was prepared by Case Consultant George Ootsey, who  found that Plaintiff retained the capacity to perform a full range of sedentary work, and would be able to perform jobs such as shaker - wearing apparel; patching-machine operator; and folding-machine operator.  (Tr. 107).

With respect to Plaintiff's daily activities, in a Function Report dated June 26, 2007, Plaintiff reported that she got up in the mornings at 10:00 am, went to the bathroom, made her bed, straightened up, got dressed, ate something, watched television until her husband got home, made dinner and went to bed.  (Tr. 93).  She stated that she also took care of her aunt-in-law.  (Tr. 94).  She reported that she cleaned a little, did laundry, drove a car, and was able to pay bills, count change, handle a savings account, and use a checkbook/money orders. She played video games, read, and wrote. (Tr. 96-97).  She reported that she walked with a limp and could not stand or walk without pain.  She reported that she could pay attention for a long time, followed written and spoken instructions well, got along well with authority figures, and handled changes in routine "good."  (Tr. 98).  In a later Function Report dated December 27, 2007, Plaintiff reported that she "lays on couch and watches tv all day" and did not take care of anyone else.[2]  She said that she did not drive because it was painful, that she got very nervous, handled stress "so-so" and did not handle changes in routine very well.  She reported that she was "grouchie" sometimes, could walk 20-30 yards,

[2]However, in an April 4, 2008 Function Report, she stated that sometime she took care of her brother-in-law and aunt.  (Tr. 75).

-7-

had to rest for 10 minutes before resuming walking, and could not understand all that was written.  (Tr. 88-89).  In a Pain and Other Symptoms report dated December 27, 2007, Plaintiff reported that she took 4 Ibuprofen tablets a day, with no side effects.  (Tr. 104).

In a Disability Report dated February 12, 2008, Plaintiff reported having pain in her left leg and hip, and was beginning to have pain in her entire back.  (Tr. 111).  She also said that her back pain and short-term memory were getting worse.  She stated that she was trying to get into the Free Clinic because she could not afford to go to the doctor and get medications.  (Tr. 112, 114).  She reported that the pain had become bad enough that it was affecting her sleep and she was becoming fatigued and irritable.  She also reported that she was very depressed and would not leave the house other than to go to the grocery store and for appointments.  (Tr. 114).

In an April 4, 2008 Function Report, Plaintiff stated that she needed help in and out of the tub and shaving the back part of her left leg.  (Tr. 76).  She stated that she prepared her own meals - tv dinners - and that her husband's grandmother sometimes fixed dinner for them.  (Tr. 77).  She stated that she was able to pay bills, but was not good with math and did not understand savings accounts or checkbook/money orders.  (Tr. 78).  In this report, she stated that she had problems getting along with family, friends, neighbors, and that she got annoyed easily.  (Tr. 80).  She reported that she did not get along well with authority figures, and felt like she had a memory block.  (Tr. 80-82).

In a Pain and Other Symptoms report dated April 4, 2008, Plaintiff reported that she took Tylenol and Ibuprofen, which caused her to be "dizzy headed."  However, in an undated Disability Report - Appeal, she indicated no side effects from Ibuprofen.  (Tr. 118).

-8-

At the hearing on February 12, 2009, Plaintiff testified that she stayed at home, read a lot about knights and fantasy and true stories, fixed microwavable meals, and that she and her husband went to the laundromat and grocery store together, played card games and dominos. (Tr. 234-236). When discussing her depression, she stated "I get down sometimes." (Tr. 253). On the day of the hearing, she had not taken any Ibuprofen because "it's not been bad this morning." (Tr. 247).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has

AO72A
(Rev. 8/82)

lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## IV. Discussion

Plaintiff contends that the ALJ erred in concluding that Plaintiff was not disabled. Defendant contends the record supports the ALJ's determination that Plaintiff was not disabled during the relevant time period of May 15, 2005, through June 16, 2009.

## A. Impairments

The ALJ found that Plaintiff's severe impairments were left hip deformity and obesity. She did not find that Plaintiff's depression was a severe impairment because it did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (Tr. 13). The Court finds substantial evidence to support this finding.

There is no dispute that Plaintiff never sought treatment for mental difficulties and did not take any medication for mental difficulties. The opinions of Dr. Chambers, Dan Donahue, and Dr. Williams support the conclusion that Plaintiff's depression caused no more than mild limitation in daily activities, moderate degree of limitation in maintaining concentration, persistence or pace, and that she could perform work where interpersonal contact was routine but superficial, where complexity of tasks was learned by experience, several variables, uses judgment with limits, and where supervision required was little for routine but detailed for non-routine.

## B. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone

-11-

is that [a claimant's] credibility is primarily a matter for the ALJ to decide." <u>Edwards v.</u>

<u>Barnhart</u>, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated

Plaintiff's subjective complaints and addressed all of Plaintiff's allegations of pain and

concluded:

> From a review of the medical evidence outlined above, it is reasonable to assume that the claimant does experience some limitations due to left hip deformity and obesity; however, the degree to which her impairments are functionally limiting is an issue which is very much open to question. The claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, duration and limiting effects of these symptoms are not credible. With the exception of a consultative general physical examination and a consultative mental status evaluation requested by the state disability determination agency, there is no current medical evidence of any treatment whatsoever for the claimant's allegedly disabling symptoms. While the claimant testified that she was unable to get into a free clinic, it appears to the undersigned that if the claimant's symptoms were as severe as she has alleged, she would have sought any treatment at all available to her, and in particular, prescription strength pain mediation. The absence of regular medical treatment during a claimed period of disability is inconsistent with allegations of severe and disabling symptoms. The evidence shows the claimant was able to move to be with her maternal grandmother in Oklahoma after leaving employment at Tyson in 2004, and that she was able to perform substantial gainful work activity at an EZ Mart for 4-5 months. In addition, she was able to travel to visit her family, re-establish contact with friends, maintain an active social life, and get married. Further, the record shows the claimant and her husband lived and worked on their trailer and that she was able to go in and out by using the steps to the trailer.

(Tr. 15-16)

It is of some moment as well that ever since her hip surgery in 1995, the only

medication Plaintiff has taken for her pain was Ibuprofen and/or Tylenol, which she testified

made her pain tolerable. Failure to seek medical treatment is inconsistent with allegations

of pain. <u>Novotny v. Chater</u>, 72 F.3d 669, 671 (8th Cir. 1995). An ALJ may discount a

AO72A
(Rev. 8/82)

claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment.  Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003).  The Court recognizes the document written by Plaintiff's counsel dated September 21, 2007, indicating that  Plaintiff was attempting to get an appointment at the Northwest Arkansas Free Clinic in Fayetteville, Arkansas, since about the end of July, and that the appointments had been full since then; but that she would continue to try to get an appointment.  (Tr. 92).  However, there is nothing in the record to indicate that Plaintiff was ever refused treatment due to insufficient funds.  See Osborne v. Barnhart, 316 F.3d 809, 812 (8th Cir. 2003) (recognizing that a lack of funds may justify a failure to receive medical care; however, a plaintiff's case is buttressed by evidence he related of an inability to afford prescriptions and denial of the medication).   The fact that a claimant is under financial strain is not determinative.  Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992).  Furthermore, the record is devoid of any credible evidence showing that Plaintiff was denied treatment due to lack of finances.

The complete evidence of record concerning her daily activities is also inconsistent with her claim of disability.  Plaintiff was able to drive, although she did not like to, and shop with her husband.  She was able to take care of most of her personal needs, care for relatives, do some household chores, watch television, read, and write. Although she walked with a limp, she was able to get around and climb some stairs to her mobile home, with the aid of the handrail.  This level of activity belies Plaintiff's complaints of limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subject allegations of disability.  See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th

-13-

Cir. 1999)(holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities - making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiffs suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.    RFC Assessment:

RFC is the most a person can do despite that person['s] limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants and Plaintiff's subjective complaints when she determined

-14-

AO72A
(Rev. 8/82)

Plaintiff could perform work at the sedentary level with certain limitations.  Although there were no medical records in Plaintiff's file, the consultative examiners considered the x-rays of Plaintiff's left hip in reaching their conclusions and diagnoses, which the ALJ considered.  The ALJ also considered the limitations the Plaintiff's obesity caused, noting that although she had been diagnosed with obesity, there was no evidence that she was on a weight reduction program or that she had been on one in the past.  (Tr. 16).  There are no medical records to contradict the findings of the examining and non-examining consultants.  Based upon the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

**D.  Hypothetical Question to the Vocational Expert:**

The ALJ asked the VE to consider that Plaintiff could do sedentary work, without any sustained driving; could not climb scaffolds, ladders, and ropes; could not do more than occasional climbing of ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance.  The VE stated that the person could do production work such as a patcher or call-out operator.  The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled.  See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

-15-

**V.  Conclusion:**

Based on the foregoing, the Court finds that the ALJ's decision is affirmed and

Plaintiff's case is dismissed with prejudiced.

IT IS SO ORDERED this 7th day of December, 2010.




/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-16-